N.B. Willis, Jr., was indicted for burglary in the third degree in violation of § 13A-7-7, Code of Alabama 1975. The jury found the appellant guilty as charged in the indictment. Following a habitual offender hearing, the trial judge sentenced the appellant to life imprisonment in the penitentiary.
At approximately 7:00 p.m. on October 1, 1981, Linda McCulley closed the grocery store that she and her husband, J. Henry McCulley, owned in Wagarville, Alabama. When she opened the store the following morning, the store was a mess. The telephone lines had been cut, and there was a hole in the storeroom where someone had removed some boards to gain entry.
J. Henry McCulley went to the store after he learned of the burglary. He discovered that 600 cartons of cigarettes, 140 knives, two knife display cases, thirty Timex watches and a watch display were missing. The approximate value of the missing items was $8,000.00.
Michael Barnett, an investigator with the Department of Public Safety went to the McCulleys' store the morning after the burglary was discovered to gather evidence. He found car tire tracks and shoe prints around the store. The shoe prints were distinctive so Barnett photographed them.
Later that day, approximately four miles from the McCulleys' store, Barnett found some of the stolen items. There were also several empty Miller beer cans in the same area. They appeared to have been recently deposited there. Barnett also found car *Page 1032 
tire tracks and shoe prints at this site, which were similar to the ones he observed at the McCulleys' store.
Barnett then took the stolen items along with the beer cans back to the McCulleys' store and dusted them for fingerprints. Sixteen latent prints were lifted off the items but Barnett was not able to recall which prints were obtained from which of these items. He then sent the latent prints to the Latent Fingerprint Section of the Department of Forensic Science. Barnett also obtained the appellant's shoes and sent them and the photographs of the shoe prints he found at the McCulleys' store to Dr. James L. Small of the Department of Forensic Science.
Carol Curlee, a latent fingerprint examiner with the Alabama Bureau of Investigation, examined the latent prints Barnett sent to her. Only six of the sixteen prints could be used for identification. One of the six prints matched the print of the appellant's left ringfinger. The other five prints were those of the appellant's two sons.
Dr. James L. Small compared the photograph of the shoe print with the sole pattern of the appellant's shoe. In his opinion, the appellant's shoe sole design was the same as or similar to the one depicted in the photograph taken at the McCulleys' store.
Dennis Earl Sullivan testified he saw the appellant and his two sons drinking Miller beer on the night of October 1, 1981.
 I
The appellant contends he was denied his Sixth Amendment right to a speedy trial. To ascertain whether an accused has been deprived of his right to a speedy trial, we must examine the four factors set out in Barker v. Wingo, 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and weigh them in light of the surrounding circumstances. The four factors are: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right, and (4) prejudice to the defendant.
The length of delay from the appellant's arrest on November 24, 1981, to his trial on November 29, 1982, was approximately one year. In light of the following discussion, we do not find this to be an excessive period of delay which deprived the appellant of his right to a speedy trial.
Initially, the appellant's trial was to begin on May 17, 1982. On that day, defense counsel claimed that the prosecutor had not fully complied with the appellant's motion to produce and, therefore, he could not adequately and properly represent the appellant at this time. The prosecutor told the trial judge that defense counsel had been supplied with the State's files. Undoubtedly, some of the information to which the appellant was entitled was not contained in those files and the prosecutor said the State would be more than willing to provide the appellant with the rest of the information if he asked for a continuance.
At this point, the appellant demanded a speedy trial. Since the trial judge realized that a retrial was likely if this case went to trial without the State's compliance with the appellant's motion to produce, he granted a motion for continuance to the State so they could comply with the appellant's motion to produce.
On June 19, 1982, the trial judge held a hearing on the appellant's habeas corpus petition. The appellant stated theone reason he had been prejudiced by the continuance was he was able to find one of his witnesses, his own son, James Larry Willis, in May but he did not know how to locate him now.
The trial court held another hearing on the appellant's habeas corpus petition on November 30, 1982, immediately after the conclusion of the appellant's trial. At this hearing, the appellant stated he had been denied a speedy trial due to the prejudice which resulted from the continuance because of his inability to locate a witness, Bobby Edwards, not his son as he had earlier alleged.
The appellant has not demonstrated how he was prejudiced by this one year delay. The reason for the continuance was legitimate. We do not believe the State acted *Page 1033 
deliberately in withholding the information and the trial judge granted the continuance rather than risk a mistrial or retrial. From our examination of the circumstances of this case, we do not find that the length of delay in the case at bar was unfair or denied the appellant his right to a speedy trial, or that any of his other rights were denied under Barker v. Wingo, supra.
 II
The appellant contends the testimony of three of the State's witnesses, Linda McCulley, Dr. James L. Small and Jack Rivers should have been excluded because the names of these witnesses were not furnished to him until just prior to trial.
From our examination of the record, it seems clear to this court that the appellant had notice that these witnesses might testify at his trial. A witness list, containing the names of Small and McCulley was placed in the State's file which was furnished to the appellant long before the trial began. This was certainly sufficient notice that these people were prospective witnesses.
Furthermore, the appellant has no absolute right to compel pretrial discovery of the identity of a State's witness. Evansv. State, 338 So.2d 1033 (Ala.Cr.App. 1976); Thigpen v. State,49 Ala. App. 233, 270 So.2d 666 (1972).
Moreover, the appellant not only had the opportunity to but actually questioned the prospective jurors on voir dire about Small and McCulley.
Therefore, we hold the trial judge properly allowed the testimony of these three witnesses.
 III
The appellant argues the latent prints Investigator Barnett lifted off of the stolen items and beer cans should not have been admitted into evidence because the State failed to establish a proper chain of custody.
Barnett testified he lifted the prints off the items and sent them to the Latent Print section of the Department of Forensic Science. Curlee, an examiner in the Latent Print section, testified she received the prints and examined them.
The appellant produced no evidence that the prints were not authentic or had been tampered with. Therefore, we find the State established a sufficient chain of custody. See Whitson v.State, 377 So.2d 1108 (Ala.Cr.App. 1979), cert. denied377 So.2d 1111 (Ala. 1979) and authorities therein cited.
 IV
The appellant also objects to the admission of the latent prints because Barnett could not testify as to which fingerprints came from which items.
Barnett testified all of the items were found in the same place and that he lifted prints off the stolen items and the beer cans. The trial judge properly admitted the prints and was correct in allowing the jury to decide what weight to be given to the latent prints in light of Barnett's testimony. James v.State, 381 So.2d 672 (Ala.Cr.App. 1980).
 V
The appellant contends the known prints of the appellant were improperly admitted into evidence because defense counsel was supplied with a known print card of the appellant which was not the one used for comparison.
There is no merit to this contention. Due to the appellant's numerous previous arrests, there were several known print cards on file. Curlee testified she used the latest print card (made in 1982) for comparison purposes but sent the best print card (made in 1967) to defense counsel in case he wanted to make a comparison for himself.
Furthermore, since no two persons have ever been found to have the same set of fingerprints, both print cards would depict the same prints of the same individual. We fail to see how the appellant was prejudiced by the admission of the known print card *Page 1034 
and therefore, the trial judge was correct in admitting this print card into evidence.
 VI
The appellant claims he was prejudiced by the trial judge's denial of his motion to hire an expert witness.
 "A denial of funds to procure an expert witness does not deprive a defendant of his constitutional rights. Thigpen v. State, 372 So.2d 385 (Ala.Cr.App. 1979). However,
 `Alabama Code 1975, Section 15-12-21 (d) provides that "(c)ounsel (appointed to defend an indigent defendant) shall also be entitled to be reimbursed for any expenses reasonably incurred in such defense to be approved in advance by the trial court, but in no individual case shall such expenses exceed one-half of the allowable attorney fees provided in this section. (Emphasis added.)"
 `Section 15-12-21 clearly authorizes reimbursement for any expense reasonably incurred in the defense of an indigent by a court appointed attorney if such expense is approved in advance by the trial court. . . . However, such expenses must be approved by the trial court. (Emphasis added).'
 Bailey v. State, 421 So.2d 1364, 1367 (Ala.Cr.App. 1982)."
Wiggins v. State, 440 So.2d 1164 (Ala.Cr.App. 1983).
We cannot ascertain the reason the trial judge did not feel it was necessary to authorize defense counsel to hire an expert witness. We can only surmise that he did not feel there was a reasonable basis for the expenditure of State funds to hire such expert witness.
Since we do not find any evidence of the abuse of the trial judge's discretion, we affirm his decision of the denial of funds to hire an expert witness.
 VII
The appellant argues that he was improperly sentenced under the habitual offender act and that his sentence of life imprisonment constitutes cruel and unusual punishment.
From our review of the record, we find the State followed proper procedures in establishing the appellant's prior convictions and that the appellant was properly sentenced to life imprisonment.
Furthermore, this court has held that sentencing under the habitual offender act does not constitute cruel and unusual punishment. Watson v. State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981). Seritt v. State,401 So.2d 248 (Ala.Cr.App. 1981) cert. denied, 401 So.2d 251 (Ala. 1981).
 VIII
The appellant's contention that the jury was improperly allowed to separate during trial is without merit.
Section 12-16-9 (d) states;
 "In the prosecution of any noncapital felony the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial, provided that the court may at any time on its own initiative or on motion of any party, require that the jury be sequestered under the charge of a proper officer whenever they leave the jury box or the court may allow them to separate. A motion to separate or sequester shall not be made within the hearing of the jury, and the jury shall not be informed which party, if any, requested separation or sequestration. (Acts 1943, No. 384, p. 358; Acts 1982, No. 82-566.)"
There is a rebuttable presumption that an accused is not prejudiced by allowing the jury to separate. Wright v. State,57 Ala. App. 401, 328 So.2d 650 (1976). The appellant has failed to demonstrate to this court that he was prejudiced by reason of the separation of the jury. Therefore, we can find no error in this contention.
 IX
The appellant urges that his motion for new trial should have been granted because *Page 1035 
the State's evidence was insufficient to support a conviction.
We agree with the appellant that his conviction was based on circumstantial evidence. However,
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. (Citations omitted)."
Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied368 So.2d 877 (Ala. 1979).
From our examination of the record, we believe that there was sufficient evidence contained therein from which the jury could, by fair inference, have found the appellant guilty of burglary in the third degree. Cumbo, supra.
For the reasons stated above, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.